ORDERED.

**Dated:  November 14, 2016**

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                  Case No.: 3: 14-bk-1934-JAF

KRISTEN ADAMS,                          Chapter 11

　　　Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Amended Motion to Modify Confirmed Plan (the "Amended Motion to Modify") (Doc. 303) and Motion to Determine Secured Status (Doc. 301) filed by the Debtor.  Wells Fargo Bank, N.A. ("Wells Fargo") filed objections to the Amended Motion to Modify and to the Motion to Determine Secured Status.  The Court conducted a trial on the matters on September 7, 2016 and elected to take the matters under advisement.  The Parties were given an opportunity to submit further briefing.   Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On April 23, 2014, the Debtor, proceeding *pro se*, filed a petition in this Court seeking bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). (Doc. 1). On May 14, 2014, the Debtor filed "Schedule D—Creditors Holding Secured Claims," which listed "Wells Fargo Mortgage" as having a first mortgage in the amount of $174,449 securing property located at 11962 Nicobar Ct. (the "Property") valued at $127,588. (Doc. 26 at 8). On August 24, 2014, Wells Fargo filed a proof of claim asserting a claim of $180,876.85 with a 5.5% interest rate. (Claim No. 9).

On October 27, 2014, the Debtor employed Brett A. Mearkle as her counsel. (Doc. 127). On November 4, 2014, the Debtor filed her Chapter 11 Plan (the "Plan," Doc. 135) and Motion to Value (the "Motion to Value," Doc. 140). In the Plan and the Motion to Value, the Debtor proposed to impair Wells Fargo's claim by valuing the Property at $156,000 and cramming down Wells Fargo's claim at a 3.25% interest rate. On December 26, 2014, Wells Fargo filed an Objection to Confirmation of the Plan. (Doc. 165). In its objection, Wells Fargo disputed the Debtor's valuation of the Property as lacking any evidentiary support. Further, Wells Fargo contested the interest rate proposed by the Debtor as not being a reasonable rate of interest. On January 20, 2015, Wells Fargo filed a response to the Motion to Value. (Doc. 179). Wells Fargo again objected to the Debtor's valuation and maintained that the value of the Property was in excess of the Debtor's proposed valuation of $156,000.

On January 8, 2015, the Court set a confirmation hearing for April 7, 2015. (Doc. 171). On January 27, 2015, the Court set a preliminary hearing on the Motion to Value

for April 7, 2015. (Doc. 188).  On April 7, 2015, the Court conducted the confirmation hearing and the preliminary hearing on the Motion to Value.  The Debtor was present at the hearing.  At the hearing Mr. Mearkle stated to the Court:

> Class 4 is a claim of Wells Fargo.  Originally, we had the value in the plan at $156,000 payable at 3.25 percent over 30 years.  As to Class 4, we have agreed that the new principal balance and the value is going to be $180,676. The interest rate we are still—we're a point apart, Judge. We are one point apart, and I have spoken with Wells Fargo and they are okay with us—they will be able to get their authorization within the next couple of days, so we are—they—we have agreed to agree that whatever it is, it's going to be.  So if it's too high, then we will agree to surrender in full and final satisfaction.  If it is not and it is within what [the Debtor] can do, that will be incorporated into the order, but the term will be 30 years.

(Doc. 262, Tr. at 6).  Later during the confirmation hearing the United States Trustee stated: "whether or not the Court confirms the plan today I suppose depends on the Court's comfort level with the pending arrangements with Wells Fargo and Chase as described by Mr. Mearkle" to which the Court responded "[w]ell, it indicated that they had an agreement that if the interest rate was too high, they were just going to amend it to surrender, which doesn't adversely affect anybody else."  (Doc. 262, Tr. at 13-14).

The Debtor's Plan was confirmed and the Motion to Value was granted as to be reflected in a confirmation order.  (Doc. 203).  On July 30, 2015, the Court entered Order Confirming the Plan of Reorganization of [the Debtor] dated November 4, 2014 (the "Confirmation Order") (Doc. 210).[1]  On August 27, 2015, the Court entered Order Granting Plan Proponent's Motion Pursuant to 11 U.S.C. § 1129(b) as to Class 4 of the [Plan] (the "Order Granting the Motion to Value") (Doc. 223), in which the Court

---

[1] The Confirmation Order valued Class 4's interest at $180,000 rather than $180,676 to and provided for a 5% interest rate.

ordered "based upon the agreement of the Class 4 creditor and the Debtor" that Class 4 "shall be bound by the Plan as confirmed."

Following the entry of the Confirmation Order, the Debtor filed an emergency motion to terminate the engagement of Mr. Mearkle.  By order dated September 21, 2015, the Court denied the emergency motion but limited Mr. Mearkle's representation of the Debtor to prosecuting a motion for final decree in the case.  On February 9, 2016, over six months after entry of the Confirmation Order, the Debtor, proceeding *pro se*, filed a motion to modify the confirmed plan (the "Original Motion to Modify").  (Doc. 269).  Wells Fargo objected to the Original Motion to Modify on February 12, 2016. (Doc. 270).  On April 27, 2016, the Debtor filed an amended motion to modify her confirmed plan (Doc. 294), which the Debtor further amended on April 29, 2016 when she filed the Amended Motion to Modify.  On April 29, 2016 the Debtor also filed the Motion to Determine Secured Status to which Wells Fargo responded on May 12, 2016 (Doc. 311).

The Debtor also initiated an adversary proceeding against Wells Fargo on March 17, 2016 by filing a Complaint for Damages (Adv. Pro. No. 3:16-ap-75, Doc. 1) (the "Adversary Proceeding") and an action in the United States District Court on May 12, 2016 (Case No. 3:16-cv-530 (M.D. Fla.)) (the "District Court Litigation"). The Debtor has since engaged current counsel, Ms. Pollan.  (Doc. 316).

On August 24, 2016, the Debtor and Wells Fargo attended a mediation. Although the parties resolved issues pertaining to the District Court litigation and issues relating to the Adversary Proceeding, issues remain regarding Debtor's ability to modify her Plan post-confirmation and the Motion to Determine Secured Status.

4

(Adv. Doc. 23).  The threshold issue before the Court is whether the Debtor can modify

the Plan.  If the Court finds that the Debtor is not permitted to modify the Plan, the Court

need not address the Motion to Determine Secured Status.

Conclusions of Law

The Debtor seeks to modify the confirmed plan pursuant to 11 U.S.C. §

1127(e)(1) and Rule 60 of the Federal Rules of Civil Procedure.  Specifically, the Debtor

seeks to have the Court revisit the Confirmation Order and permit her to value the

Property at $156,000.  Section § 1127(e)(1) provides that:

> [i]f the debtor is an individual, the plan may be modified at
> any time after confirmation of the plan but before
> completion of payments under the plan, whether or not the
> plan has been substantially consummated, upon request of
> the debtor… to (1) increase or reduce the amount of
> payments on claims of a particular class provided for by the
> plan.

Section 1127(e) was enacted in 2005 as part of the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005 and is virtually identical to § 1329(a)(1)-(3), the

Chapter 13 post-confirmation modification provision.  A party seeking modification under

§ 1329(a)(1) must show a substantial, unanticipated change in circumstances.  In re

Hernandez, 2015 WL 393410 at *3 (Bankr. M.D. Fla. Jan. 28, 2015).  "[P]rinciples of

claim preclusion or res judicata bar a trustee from raising as grounds for modification

facts that were known and could have been raised prior to confirmation of the debtor's

plan."  In re Euler, 251 B.R. 740, 746 (Bankr. M.D. Fla. 2000)(quotation omitted).[2]  The

Court finds that the same standard applies to the post confirmation modification of an

individual Chapter 11 case; the Debtor must demonstrate a substantial, unanticipated

change in her financial circumstances.  The Debtor asserts that her income has been

---

[2] The same principles apply to a debtor seeking a post-confirmation modification.

significantly reduced over the past year because she has had to expend money on continued United States Trustee fees, attorney's fees, and expert fees in preparing for the hearing on the Amended Motion to Modify and the Motion to Determine Secured Status. While the Debtor attempts to frame the issue as one involving a post-confirmation substantial, unanticipated change in circumstances, the continuing United States Trustee fees are not unanticipated.  They are the result of the Debtor waiting more than six months after the entry of the confirmation order and approximately ten months after the confirmation hearing to seek to modify the plan.  Additionally, because the Debtor would have incurred attorney's fees and expert fees in preparing for the hearing on the Motion to Value whether the matter was litigated before or after confirmation, those expenses are not unanticipated.  Finally, the Debtor asserts that she has been required to appear as a witness in a New Jersey criminal case in which a contractor absconded with money she had paid him to repair her house.  The Debtor alleges that she has flown to New Jersey a number of times to attend hearings in the case.  Aside from the fact that the Debtor produced no documentation evidencing her unreimbursed travel expenses, the Court does not understand why the Debtor, a witness/victim who resides in Florida, would be required to appear multiple times in a criminal case in New Jersey.  The Court finds that the Debtor failed to demonstrate a substantial, unanticipated change in circumstances. Even assuming that the Debtor had demonstrated a substantial and unanticipated change in circumstances, it is not certain that she would have been entitled to modify the Plan under § 1127(e)(1).  Cases interpreting § 1329(a)(1) have held that while § 1329(a)(1) permits a debtor to alter the amount of their payment on a claim to accelerate or reduce the rate at which a claim is paid, it does not permit a debtor to alter the amount of an

allowed secured claim post-confirmation.  In re Meeks, 237 B.R. 856, 860 (Bankr. M.D. Fla. 1999).

The Court turns to the Debtor's request for relief pursuant to Rule 60 of the Federal Rules of Civil Procedure.  Rule 60(b)(1), made applicable to bankruptcy cases by Bankruptcy Rule 9024, provides that a final order may be set aside for mistake, inadvertence, surprise or excusable neglect.  The Debtor appears to argue that the entry of the Confirmation Order was a "mistake" because Mr. Mearkle acted without her authority.  While two Circuit Courts of Appeal have indicated that Rule 60(b)(1) encompasses a situation in which an attorney acts without the authority of his client, See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999); Cacevic v. City of Hazel Park, 226 F.3d 483, 490 (6th Cir. 2000), the Eleventh Circuit has not.  At least one court in the Eleventh Circuit has explicitly rejected such an argument.  In Jacobs v. Elec. Data Sys. Corp., 240 F.R.D. 595, 598 (M.D. Ala. 2007) the movant sought to vacate pursuant to Rule 60(b) a summary judgment order dismissing her claims.  The movant argued that her attorney abandoned certain claims without consulting her and without her authorization or consent.  Id.  The court noted:

> When a party expressly states that she is abandoning a claim, this is not excusable neglect under Rule 60(b)(1), which is designed to relieve parties from missed deadlines, computer glitches, and similar oversights.  As the Supreme Court made clear in Pioneer [Investment Services], 507 U.S. at 396, clients are held accountable for the mistakes of their attorneys, such that motions for relief due to excusable neglect focus on whether the attorney's mistake was excusable as if the party had made the error, not whether the attorney acted against the wishes of the client. Accordingly, even if [the movant]'s attorney never obtained her consent to drop the claims, she cannot obtain relief under Rule 60(b)(1).

Id. at 601.  The Court would be reluctant to apply Rule 60(b)(1) to a case in which an attorney acts without the authority of his client.  However, even if it were clear that the Rule applies to such a situation, the evidence in this case falls short of that necessary to establish that Mr. Mearkle acted without the Debtor's consent or authority.  "It is axiomatic that an attorney of record has authority to represent the person for whom he or she appears," including agreements entered into on the record in open court, "and is presumed to be authorized to take actions necessary to conduct the litigation."  In re Taub, 421 B.R. 93, 104 (Bankr. E.D.N.Y. 2009)(citations omitted).  A client who challenges an act undertaken by an attorney with actual or apparent authority bears the burden of producing evidence that the act was not authorized.  Id.  A court is entitled to rely on statements made by counsel in open court particularly when the attorney's statements on the record are plain and unequivocal and the client is present.  Id.  As the Court noted, the Debtor was present at the confirmation hearing when Mr. Mearkle plainly and unequivocally indicated to the Court that the Debtor and Wells Fargo had agreed to a value of $180,676 as to the Property and that the Debtor would surrender the Property in full satisfaction of the debt if the parties could not agree to an interest rate.  Nonetheless, the Debtor expressed no concerns to the Court as to the agreement.  To the extent the Debtor disagreed with the valuation, she should have brought that issue to the Court's attention at the confirmation hearing or shortly thereafter rather than by seeking to modify the plan more than six months after the entry of the Confirmation Order and approximately ten months after the confirmation hearing.  The Debtor's delay in raising the issue undermines the credibility of her assertion.  The Court finds that the Debtor failed to prove that Mr. Mearkle acted without her authority.  The Debtor is not entitled to

relief from the Confirmation Order pursuant to Rule 60(b)(1).  Having found that the the Debtor is not permitted to modify the Plan, the Court need not address the Motion to Determine Secured Status.  The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

The Clerk's office is directed to serve a copy of this Order on interested parties.